F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAY 28 2020  ★

LONG ISLAND OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---

 Janet  Schlock

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

 Brookhaven Science Associates LLC.

_____

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

---

**Complaint for Employment Discrimination**

Case No. **CV-20-2370**
*(to be filled in by the Clerk's Office)*

Jury Trial:    X Yes    ☐ No
        *(check one)*

# BROWN, J.

## LOCKE, M. J.



ENCLOSURES
AFFIDAVIT
RIGHT TO SUE

_____

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Janet Schlock |
| Street Address | 3 Beaverbrook Drive |
| City and County | Brookhaven |
| State and Zip Code | New York, 11719-9403 |
| Telephone Number | 631-806-7554 |
| E-mail Address | brookhaven@optonline.net |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Brookhaven Science Associates LLC. |
| Job or Title (if known) | N/A |
| Street Address | 40 Brookhaven Ave. BLDG 460 |
| City and County | Upton , Suffolk |
| State and Zip Code | New York, 11973-5000 |
| Telephone Number | 631-344-8000 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |

2

☐    Other federal law *(specify the federal law)*:

_____

☐    Relevant state law *(specify, if known)*:

_____

☐    Relevant city or county law *(specify, if known)*:

_____

**III.    Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

       ☐    Failure to hire me.

       ☐    Termination of my employment.

       ☐    Failure to promote me.

       ☐    Failure to accommodate my disability.

       X    Unequal terms and conditions of my employment.

       X    Retaliation.

       ☐    Other acts *(specify)*:    _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

Began on June 21, 2019 and continues today

C.    I believe that defendant(s) *(check one)*:

        X    is/are still committing these acts against me.

        ☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

        ☐    race _____

        ☐    color_____

        X    gender/sex _____

        ☐    religion _____

        ☐    national origin _____

        ☐    age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

        ☐    disability or perceived disability *(specify disability)*

        _____

E.    The facts of my case are as follows.  Attach additional pages if needed.

    __Please see attached EEOC affidavit dated December 17, 2019_____

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

5

**IV.    Exhaustion of Federal Administrative Remedies**

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

December 17, 2019

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

X    issued a Notice of Right to Sue letter, which I received on *(date)*
    Issued on March 5, 2020, Received March 10, 2020            .
    *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

**V.    Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

 Punitive, compensatory and actual damages to be determined by a jury

6

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _May 27_, 20 _20_

Signature of Plaintiff       _Janet S. Glock_

Printed Name of Plaintiff    _JANET SCHLOCK_

7

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA  ☒ EEOC | |

and EEOC

_____

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.)  Janet Schlack | HOME TELEPHONE (Include Area Code) | |
|---|---|---|
| STREET ADDRESS  3 Beaver Brook Drive | CITY, STATE AND ZIP CODE  Brookhaven, NY 11719 | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME  Brookhaven Scime Asso | NUMBER OF EMPLOYEES, MEMBERS  20+ | TELEPHONE (Include Area Code) |
|---|---|---|
| STREET ADDRESS  40 Brookhaven Ave, Bldg 460 | CITY, STATE AND ZIP CODE  Upton, NY 11973 | COUNTY |
| NAME | TELEPHONE NUMBER (Include Area Code) | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE  6/21/2019 |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please See attached Affidavit

> PAUL A CARRUTHERS
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 02CA6375499
> Qualified in Suffolk County
> Commission Expires May 21, 2022

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)  Paul Carr |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.  Date 12/17/19    Charging Party (Signature) | SIGNATURE OF COMPLAINANT  Janet Schlack  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  (Day, month, and year)  17/12/19 |

EEOC FORM 5 (REV. 3/01)

**The Following is an Affidavit Sworn to, and by Janet Schlock ("Charging Party") to be Filed with Charging Party's Formal Charge of Discrimination and Retaliation Against Brookhaven Science Associates ("Respondent") for Gender Discrimination and for Retaliation for Engaging in Protected Activity.**

1.      **Respondent's Business**

Respondent is a national laboratory overseen and primarily funded by the Office of Science of the U.S. Department of Energy ("DOE"), Respondent conducts research in the physical, biomedical, and environmental sciences, as well as in energy technologies and national security.

2.      **Personal Harm:**

Charging Party began her employment with Respondent on or about August 6, 2007 to be Respondent's Senior Contract Specialist. Based on Charging Party's success in her role as Senior Contract Specialist, in September of 2013 Charging Party was promoted from a Senior Contract Specialist (A8) to NSLS-II Procurement Supervisor (A9). Charging Party continued to faithfully and successfully perform her necessary functions and received performance reviews rating her performance "Commendable."

On or about February 19, 2016, Charging Party was interviewed as a result of her co-worker, Francine Militscher, filing a gender discrimination claim against Respondent. During the interview Charging Party expressed that she felt that she was also the victim of gender discrimination and thought that by participating in the investigation that she was putting herself at risk. Charging Party expressed her concern with going to Human Resources ("HR") because of a distrust with HR among Respondent's employees. The investigation concluded with a result of "no findings" despite Charging Party providing supporting details outlining gender discrimination. This result caused Charging Party to have further distrust for Respondent's HR.

On August 30, 2018 Charging Party received an offer letter via email from Christina Sanfilippo from Respondent's HR offering Charging Party the position of Compliance Supervisor. The offer was for an annual salary in the amount of $117,000 per year. Charging Party took issue with the salary as it is not in-line for a person in the role of Government Procurement Compliance Officer performing the Roles and Responsibilities for a similar position in the State of New York.

It should be noted there is a differentiation between Compliance Supervisor in a commercial facility and a Compliance Supervisor working in the government sector. While Respondent is a private organization, it is under contract with the DOE and the Prime Contract flows down from DOE requirements to Respondent. During salary negotiations Charging Party requested $130,000 per year, this amount is within the salary grade for an A9.

1

All of Charging Party's attempts to negotiate were flatly declined. Upon information and belief, this was discrimination based on Charging Party's gender. Charging Party had the good faith belief that this was gender discrimination based upon the facts that when George Woods ("Woods") and David Paveglio ("Paveglio") were A9's and promoted, their pay grade jumped from A9 to M2 skipping over M1.

The reason stated at the time by Tony Guadagni, Respondent's Division Director, was that they had to be promoted to M2 to get them the money they wanted to accept the positions offered. That means that both men were at the top of their salary grade at A9 and had to skip over the M1 salary grade to be an M2 . However, at the same time Charging Party was promoted to an A9 she was given an amount with no ability to negotiate.

All attempts at negotiation were declined for Charging Party, a female. Charging Party made several attempts to negotiate the salary of Compliance Supervisor, but was told the amount offered was the most that HR would authorize. Upon information and belief, Bradley Leavitt, who was hired as Respondent's Contracts Administrator, Construction (A9), received a higher salary as compared to Charging Party for a similar position with job responsibilities similar to those of Charging Party's prior position.

The gender discrimination is further demonstrated by the fact that Charging Party's performance ratings that rated her performance "Commendable" and the fact that Charging Party's history of  annual salary increases averaged only 3.14% over 12 years of employment at Respondent.  Comparing Charging Party to her similarly situated co-workers, Woods and Paveglio, who were promoted from A9 to M2 level, would demonstrate that their rate of salary increases were much greater based upon the fact that they are males.

When Woods and Paveglio were A9s they made a significant amount more than Charging Party did when she was promoted into the A9 position of Photon Science Procurement Supervisor. Upon  information and belief, the women in Procurement and Property Management earn less of a salary than men of equal positions with equivalent experience and job responsibilities.

On September 4, 2018, Charging Party began in the position of Compliance Supervisor. At that time Charging Party was told by Interim Division Manager Kevin Fox that she should continue to support the Nuclear Non Proliferation Department ("NNPD") by writing contracts. This was a part of Charging Party's responsibilities prior to accepting the position of Compliance Supervisor.

Due to her dedication to Respondent, Charging Party supported the NNPD Contracts in addition to some of the new Compliance responsibilities.  At that time, both Paveglio and Woods were still working at Respondent. Kevin Fox, Paveglio and Woods assisted with quarterly file compliance. Paveglio continued to administer the Terms and Conditions and the Balanced Score Card.  This arrangement continued for seven months (September 2018 through the end of March 2019).

On March 11, 2019 Lynn McKnight ("McKnight"), a male, started as the new Procurement and Property Management Division Manager. Kevin Fox , the interim Manager went back to be Respondent's Prime Contract Manager, a post he had previously held.

There were about 2 months (April and May of 2019) when McKnight advised Charging Party that she should transfer her Contracts to another Contract Specialist so Charging Party could work on Compliance full time and Charging Party did as instructed. During this period of time, Paveglio was still working on both the Terms and Conditions and the Balanced Scorecard. Charging Party discussed this with Paveglio and he confirmed her understanding that he was in fact working on those tasks. During this time, Charging Party worked on the review / update of the Procurement Operations Manual ("POM"), the quarterly file reviews, the daily file reviews, the monthly Dashboard Report to the DOE, support for the department members compliance questions, facilitation of procurement specific training, and presentation of the monthly lab wide Contract Administration training.

The update to the POM was about 85% complete when McKnight advised Charging Party to go back to writing Contracts, and that they would bring Kevin Fox back to the department on a part time basis to support the quarterly Compliance file reviews in support of the Balanced Scorecard to allow Charging Party time to write Contracts. Kevin Fox was also supposed to be reviewing Charging Party's draft POM revisions, quarterly file reviews and processing the Records of Decision.

In an act of discrimination based on Charging Party's gender, she was excluded from most management level meetings and was told the reason was because "they were managerial and had nothing to do with Compliance." Charging Party responded by stating that pretty much everything has to do with Compliance, Charging Party reviews the files and as Compliance Supervisor she has the best feel for staff capabilities on both the positive and negative sides.

Charging Party also stated that she needs to assure that any changes made within the department are in compliance with the requirements set forth in the Prime Contract. Her comments were ignored and she was continually excluded from the meetings. This exclusionary behavior was motivated by a discriminatory intent to harm Charging Party's career with Respondent and to tarnish her reputation as a commendable employee at Respondent.

After several months of very limited involvement with McKnight, Charging Party started to become concerned.

Charging Party never received her Mid-Year review that is required by Respondent's HR policy, and McKnight never spoke with Charging Party about her performance with regard to the Compliance position.

On Thursday September 19, 2019, over a full year after accepting the Compliance position, Charging Party received an invitation to attend a meeting in HR along with Chief Financial Officer, George Clark, Procurement and Property Division Manager Lynn McKnight and HR Representative Christel Colon ("Colon").

3

Colon stated that based on conversations and observations, she and McKnight had concerns with Charging Party's ability to perform the Compliance position. However, Charging Party was performing her position responsibilities successfully for over one full year with no issues being raised or brought to her attention that her performance was deficient. Colon went on to state that the Compliance position was separate from Charging Party's ability to perform Contracts at the A9 level and went on to indicate that they have had very favorable feedback on Charging Party's work as a Contract Administrator.

In this meeting it was indicated that there are two components to Charging Party's job and that Compliance was only half. This statement was not consistent with the job description posted at the time Charging Party accepted the position. In an act of discrimination against Charging Party, Respondent was now trying to add additional tasks to Charging Party's responsibilities without notice and change the job description after she accepted the position. Upon information and belief, this was done so that Charging Party could not attend to the documented functions of her position, and then Respondent could discipline her.

Charging Party was then confronted with the fact that she did not update the Terms and Conditions. Charging Party explained that she had discussed the Terms and Conditions with Paveglio and that Paveglio, her immediate Manager, told her that he was updating the Terms and Conditions.

At that point McKnight said "That's your job, why would you want to have someone else do your job?" Charging Party stated that Paveglio was her immediate manager and Paveglio told her that he was working on the Terms and Conditions. McKnight stated that Charging Party cannot allow someone else to do her job. Charging Party was not seeking to have other people to do her job but was told by her supervisor that he was handling a specific task. As Charging Party's supervisor, Paveglio could have given Charging Party a directive to do the task herself if he felt like Charging Party was trying to shirk her job responsibilities.

Charging Party asked if she was being put on a Performance Improvement Plan ("PIP"). Charging Party was told no, not at this time. Colon then gave Charging Party an additional task to complete in an attempt to cause Charging Party to fall behind on the actual job responsibilities her position required of her.

Colon demanded that Charging Party take the job post for the Compliance Supervisor Position, add two columns to the right, one column should be what Charging Party has done to support the job requirement, and the second column would be what Charging Party will do to support the same requirement. This should be repeated for each requirement listed within the job posting. McKnight and Colon agreed that they would like this assignment to be returned to Colon on or before September 30, 2019. Upon information and belief, no other similarly situated male co-workers had to perform additional tasks of this nature.

After consideration of how Charging Party had been asked to spend a significant portion of her time writing contracts since she accepted this position, after coming to the understanding that there was no room for on the job training, after being blindsided by a meeting in Human Resources without any advance notice, and in consideration that Charging Party was told that she

4

had a great reputation with her customers for her ability to write Contracts – it became apparent to Charging Party that nothing she did would satisfy Respondent with respect to her position of Compliance Supervisor.

Respondent afforded Charging Party very little time to work on Compliance and then ended up reprimanding her for not accomplishing something that another (male) manager told Charging Party he was going to do.  Upon information and belief, major acts of non-compliance at the hands of Bradley Leavitt have been discovered yet he was not subjected to the same type of over scrutiny and assignment of additional tasks as compared to Charging Party.

On Friday September 20, 2019 in response to the meeting the prior day, Charging Party went into Mcknight's  office and proposed to go back to her former position, at no loss in salary, as it was noted that she was considered very good at writing Contracts, and in consideration of Respondent's opinion of her abilities within the Compliance field. Charging Party also expressed that her performance review should reflect that the position change was arrived at by mutual agreement and should contain no negative comments.  McKnight stated that he would think about it and would get back to Charging Party.

On Thursday September 26, 2019 McKnight called Charging Party into his office to tell her that she could return to her prior position but would suffer a  $6,700 reduction to her salary and that her performance evaluation would reflect the performance as Compliance Supervisor.  Charging Party told him that she would think about it.

On September 27, 2019 Charging Party sent an email to Colon formally complaining of Gender Discrimination. Specifically, Charging Party took issue with the meeting conducted on September 19th, and the follow-up discussions that she had with McKnight on September 20th and 26th.  Charging Party's email requested that they return her to her prior position at no loss in salary and that her performance evaluation should reflect the decision to transition back to her prior position was arrived at by mutual agreement.

Charging Party had a scheduled vacation from October 1 until October 30, 2019.  This vacation was planned a year in advance as it involved extensive travel and in no way was planned because of the events immediately preceding this time.

On Thursday October 31, 2019 Charging Party received a meeting notice from Colon to meet the following day, Friday November 1, 2019 in Human Resources.

At this meeting, McKnight was now stating that he envisioned the Compliance Position to be 20% writing Contracts with the balance of effort supporting the Compliance function. McKnight expressed that he thought Charging Party would be working on small uncomplicated contracts.  Charging Party gave an example of such a "small uncomplicated" contract which turned into a 6 month effort just to get the contract placed.  Charging Party expressed that small does not always mean uncomplicated.

Colon attempted to explain her comment of September 19 addressing there being no room for On the Job Training.  She stated that Charging Party does have relevant knowledge and

does not require much on the job training. She commented that we are always training and learning.

Colon noted that the meeting of September 19 was not intended to broadside anyone and as a new manager McKnight does not have the latitude to work out these types of issues on his own.

Colon again asked Charging Party what she wanted to do and Charging Party indicated that given the discussion and dissatisfaction expressed with her job performance in the meeting of September 19, along with her revised understanding of Compliance Supervisor being a Part-Time position Charging Party felt that it would be in everyone's best interest to return to her prior position at no reduction in salary.

McKnight indicated that the job transition could occur in February 2020. This was 4 months from the date of the meeting, even though there were open positions at the time of the discussion. McKnight indicated that Charging Party's performance evaluation would have input from Kevin Fox, David Paveglio and Lynn McKnight.

Colon asked if there was anything else that Charging Party wanted to address and she stated not at this time.

On Monday November 4, Charging Party sent Colon an email stating that she did have something that she wanted to follow up on, and formally requested a full investigation, by a neutral third party, addressing Charging Party's formal complaint of gender discrimination. Charging Party went on to state that she did not want to be discriminated and/or retaliated against for her formal complaint of gender discrimination.

On Thursday November 14, 2019, Charging Party came to learn that Respondent hired Jeremy Duncan ("Duncan") to be the Procurement Contracts Professional (A9). It was mentioned that Duncan was hired for Construction, but Respondent is thinking of putting him on the new Project. Charging Party believes the hiring and intended placement of Duncan was in retaliation for her formal complaint of gender discrimination.

Charging Party had the good faith belief that this was retaliation because she had just discussed going back to working on the Project Contracts with Mcknight and Colon on November 4, 2019 but they filled the position with a male who, upon information and belief, was less qualified for the position as compared to Charging Party. Charging Party also had the good faith belief that Duncan was receiving a higher salary as Respondent's Procurement Contracts Professional (A9) compared to Charging Party when she had the same title and position responsibilities.

On December 6, 2019, Charging Party met with Margaret Miles-Douglas ("Miles-Douglas"), Respondent's HR Representative to discuss Charging Party's concerns of discrimination and retaliation. During this meeting Charging Party got the feeling that her claims of gender discrimination and retaliation were not being taken seriously. This is based upon the fact that Miles-Douglas was providing superficial and pretextual excuses for the discriminatory and retaliatory behavior. After the meeting, Charging Party was told that Miles-Douglas would

6

have to write everything up and enter it into Respondent's system. Miles-Douglas did not offer to provide Charging Party a working environment free of discrimination and retaliation but instead left Charging Party feeling like it was ok to subject her to further disparate and adverse treatment.

3.   **Remedy**
The following remedy is demanded due to Respondent's discrimination against Charging Party due to her gender and retaliation for his engagement in Protected Activity:

For a money judgment representing actual damages;

For a money judgment representing compensatory damages;

For a money judgment representing punitive damages;

For a money judgment representing emotional damages;

All attorney fees and costs;

Any and all equitable relief; and

For such other and further relief as may be deemed just and proper.

Dated: Islandia, New York
      December _17_, 2019

_Janet Schlock_
Janet Schlock

Sworn to this _17th_

Day of December, 2019.

_____
Notary Public

PAUL A CARRUTHERS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02CA6375499
Qualified in Suffolk County
Commission Expires May 21, 2022

7

EEOC Form 161-B (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Janet M. Schlock<br>3 Beaver Brook Drive<br>Brookhaven, NY 11719 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2019-06164 | Orfelino Genao,<br>Investigator | (929) 506-5335 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Judy A. Keenan,
Deputy Director

3-5-2020
*(Date Mailed)*

Enclosures(s)

cc:
Attn
**Director of Human Resources**
**BROOKHAVEN SCIENCE ASSOCIATES**
40 Brookhaven Ave., Bldg 460
Upton, NY 11973

Paul A. Carruthers, Esq.
**SCOTT MICHAEL MISHKIN, PC**
One Suffolk Square,
Suite 240,
Islandia, NY 11749

**U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

FIRST CLASS

U.S. POSTAGE >> PITNEY BOWES

ZIP 10004  $ 000.50⁰
02 4W
0000360941 MAR 06 2020

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Scott Michael Mishkin, PC
One Suffolk Square, Suite 240
Islandia, NY 11749
Attn: Paul Carruthers

1174931543 C040